Citation Nr: 1823350 
Decision Date: 04/20/18 Archive Date: 04/26/18

DOCKET NO. 09-33 000 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to an initial rating for degenerative disc disease (DDD) of the lumbar spine in excess of 10 percent for the period prior to February 19, 2010 and in excess of 20 percent thereafter.

2. Entitlement to service connection for right shoulder spurring.

3. Entitlement to service connection for chronic obstructive sleep apnea. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. Ryan, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1990 to May 1997, as well as service in the National Guard.
 
These matters come before the Board of Veterans' Appeals (Board) from August 2007 and June 2009 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida and Oakland, California.

In the August 2007 rating decision, the RO granted service connection for DDD of the lumbar spine and assigned an initial 10 percent rating, effective March 14, 2007, and denied service connection for a right shoulder disability. In the June 2009 rating decision, the RO denied service connection for sleep apnea.

In a September 2011 rating decision, a higher 20 percent rating was granted for DDD of the lumbar spine, effective February 19, 2010. However, as that award did not represent a total grant of benefits sought on appeal, the claim for initial higher ratings remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993).

In the Veteran's October 2009 substantive appeal (via a VA form 9), he requested a hearing before the Board; however, in February 2018 written correspondence, he withdrew his request for a hearing before the Board and requested a decision. Accordingly, his request for a hearing is considered to be withdrawn and his claim will be reviewed based on the evidence of record. See 38 C.F.R. § 20.704 (e)(2017).

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

The Veteran contends that he is entitled to service connection for obstructive sleep apnea and right shoulder spurring, as well as entitlement to an initial rating in excess of 20 percent for degenerative joint disease of the lumbar spine. For the following reasons, the Board finds remands necessary for all three conditions.

Concerning the Veteran's claim for obstructive sleep apnea, the Veteran claims that his sleep apnea occurred during active duty, despite not receiving an official diagnosis until November 2008. While there is no indication that the Veteran suffered from sleep apnea during his active duty, the Veteran submitted several lay statements from his ex-wives and fellow soldiers attesting to his snoring problems and inability to sleep during active duty. When the Veteran exited National Guard duty, it was in part due to obstructive sleep apnea. To date, the Veteran has not yet received an examination for his claim. Upon remand, the RO is instructed to schedule the Veteran for an examination to determine whether it is more or less likely that his sleep apnea symptoms had their onset during his active duty. The examiner is asked to take into consideration the multiple lay statements submitted by the Veteran attesting to the onset of symptoms while on active duty.

Concerning the Veteran's right shoulder, the Veteran states that his condition occurred during active service when he was injured during a softball game, and that he then received treatment in Berlin-in August 2009, the Veteran submitted medical documents written in German that may support his contention. In May 2007, the Veteran received a Compensation and Pension (C&P) examination in which he was diagnosed with right shoulder degenerative spurring; the examiner determined the onset of the Veteran's condition was during active duty, and his condition was at least as likely as not aggravated by overuse. The examiner, however, did not explain the rationale for his statement, nor did he address the Veteran's motor vehicle accident as a child in which he injured his right shoulder or the personal assaults in which the Veteran's shoulder was injured. Accordingly, an additional examination is necessary in which the examiner addresses the Veteran's medical history and which incidents may or may not contribute to his current condition, and the RO is asked to send the Veteran's submitted medical documents written in German for translation.

Lastly, concerning the Veteran's degenerative joint disease of the lumbar spine, the Veteran's last examination was in May 2007. Since then, the Veteran submitted claims of worsening. Pursuant to his claim of worsening, the RO scheduled the Veteran for an examination. Because the Veteran did not respond to an RSVP request for the exam, the RO cancelled the examination. Given the 11 years between the Veteran's 2007 examination and now, an additional examination is in order. 

Accordingly, the case is REMANDED for the following actions:

1. Schedule the Veteran for a VA examination by a qualified examiner to determine the nature and etiology of his sleep apnea. The examiner is asked to review the claims file and provide the following information:

(a) State whether the criteria for a diagnosis of sleep apnea is met.

(b) Opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran's sleep apnea was incurred in or otherwise related to the Veteran's active duty service.

(c) If it is determined that there is another likely etiology for the Veteran's sleep apnea, that should be stated.

(d) The examiner is asked to specifically address the Veteran's multiple lay statements stating that the Veteran suffered from symptoms during his active duty and prior to his diagnosis. The examiner is also requested to address the physical profile, DA Form 3349 noting that the symptoms of sleep apnea dated back to his service in Europe, while assigned to the regular Army. 

The examiner should set forth all examination findings, with a clear rationale for the conclusions reached.

2. Schedule the Veteran for a VA examination by a qualified examiner to determine the nature and etiology of his right shoulder spurring. The examiner is asked to review the claims file and provide the following information:

(a) State whether the criteria for a diagnosis of right shoulder joint spurring is met.

(b) Opine whether it is at least as likely as not (50 percent or greater probability) that the Veteran's condition was incurred in, or otherwise related to the Veteran's active duty service, or aggravated by the Veteran's active duty service.

(c) If it is determined that there is another likely etiology for the Veteran's conditions, that should be stated. The examiner is specifically asked to address the Veteran's medical history of car accidents.

(d) The examiner is asked to specifically address the Veteran's May 2007 examination in which the examiner determined the Veteran's symptoms most likely occurred during active duty and that his condition was aggravated by his active duty.

The examiner should set forth all examination findings, with a clear rationale for the conclusions reached.

3. Send the medical records written in German and submitted by the Veteran in August 2009 for translation into English.

4. Schedule the Veteran for an examination with an appropriate VA examiner to determine the nature and severity of the Veteran's DDD of the lumbar spine.

The examiner is particularly asked to discuss the following:

(a) Conduct range of motion testing in active motion, passive motion, weight-bearing, and non-weightbearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain what that is so.

(b) Whether or not the Veteran suffers from unfavorable ankylosis of the entire spine or the entire thoracolumbar spine;

(c) Whether or not the Veteran suffers from forward flexion of the thoracolumbar spine 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine.

(d) The examiner should also state whether the examination is taking place during a period of flare-up. If not, the examiner should ask the Veteran to describe the flare-ups he experiences, including: frequency, duration, characteristics, precipitating and alleviating factors, severity and/or extent of functional impairment he experiences during a flare-up of his spine symptoms and/or after repeated use over time. 

Based on the Veteran's lay statements and the other evidence of record, the examiner should provide an opinion estimating any additional degrees of limited motion caused by functional loss during a flare-up or after 
5. After ensuring compliance with the above, readjudicate the claims. If any benefit sought on appeal remains denied, the Veteran and his representative should be provided a supplemental statement of the case. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
LESLEY A. REIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).